**IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JASMINE SOURBEER | : | |
| 41 Kerrs Avenue, | : | |
| Carlisle, PA 17013 | : | Civil Action No.: _____ |
| | : | |
| Plaintiff, | : | |
| | : | **JURY TRIAL DEMANDED** |
| v. | : | |
| | : | |
| THE SALVATION ARMY | : | |
| 701 North Broad Street, | : | |
| Philadelphia, PA 19123 | : | |
| | : | |
| and | : | |
| | : | |
| WILLIAM BALTAEFF | : | |
| 405 East Main Street, Apt. 1 | : | |
| Mechanicsburg, PA 17055 | : | |
| | : | |
| Defendants. | : | |

**COMPLAINT – CIVIL ACTION**

Plaintiff, Jasmine Sourbeer ("Plaintiff"), by and through her undersigned counsel, for her Complaint against The Salvation Army ("Defendant Salvation Army") and William Baltaeff ("Defendant William Baltaeff"), alleges as follows:

**INTRODUCTION**

1.     Plaintiff brings this action to redress violations by Defendant Salvation Army of Title VII of the Civil Rights Act of 1964 ("Title VII"), 29 U.S.C. § 2000e, et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, et seq., and for personal injuries by Defendant William Baltaeff.

1

2.      Specifically, Plaintiff contends that Defendant Salvation Army subjected her to discrimination on the basis of sex and gender and retaliated against her for making a good faith complaint of sexual harassment and discrimination on the basis of sex and gender.

3.      Specifically, Plaintiff contends that Defendant William Baltaeff caused her personal injuries, pain and suffering, loss of enjoyment of life, and medical expenses because of his unconsented touching of Plaintiff.

4.      As a result, Plaintiff has suffered damages as set forth herein.

## PARTIES

5.      Paragraphs 1 through 4 are hereby incorporated by reference as though the same were fully set forth at length herein.

6.      Plaintiff, Jasmine Sourbeer, is a citizen of the United States and Pennsylvania, where she currently maintains an address at 41 Kerrs Avenue, Carlisle, PA 17013.

7.      Defendant Salvation Army is a domestic non-profit corporation organized and existing under the laws of the Commonwealth of Pennsylvania with a principal place of business located at 20 E Pomfret Street, Carlise, PA 17013.

8.      Defendant William Baltaeff is an adult citizen reasonably believed to be currently residing at 405 East Main Street, Apartment 1, Mechanicsburg, PA 17055.

2

## **JURISDICTION AND VENUE**

9.      Paragraphs 1 through 7 are hereby incorporated by reference as though the same were fully set forth at length herein.

10.      On or about February 2, 2026, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was dually filed with the Pennsylvania Human Relations Commission ("PHRC"), thereby satisfying the requirements of 42 U.S.C. § 2000e-5(b) and (c), and 43 P.S. § 959(a).  Plaintiff's EEOC Charge was docketed as EEOC Charge No. 530-2026-03444.  Plaintiff's EEOC Charge was dual-filed within one hundred and eighty (180) days of the unlawful employment practice.

11.      By correspondence dated May 6, 2026, Plaintiff was issued a Notice of Right to Sue from the EEOC regarding her Charge, advising Plaintiff that she had ninety (90) days to file suit against Defendant.

12.      Plaintiff filed the instant action within the statutory time frame applicable to her federal claims.

13.       Although one (1) year has not yet passed since Plaintiff dual filed her Charge with the EEOC and the PHRC, courts in this Circuit have adopted a flexible approach to PHRA exhaustion by permitting plaintiffs to maintain PHRA claims if the one (1) year deadline expires during the court proceedings. O'Malley v. Dowd

Marketing, Inc., No. 17-cv-1419, 2018 WL 6313616, at *10-11 (M.D. Pa. Nov. 15, 2018) (citations omitted).

14.    Plaintiff has therefore exhausted her administrative remedies and has complied with all conditions precedent to maintain this action.

15.    This is an action authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 29 U.S.C. § 2000e, *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq.*

16.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as it is a civil rights action arising under the laws of the United States.

17.    This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as those claims arise out of the same common nucleus of operative fact as her federal claims.

18.    The venue in this district is proper pursuant to 28 U.S.C. § 1391(b), as the unlawful practices of which Plaintiff is complaining were committed in the Commonwealth of Pennsylvania in this judicial district.

## FACTUAL BACKGROUND

19.    Paragraphs 1 through 18 are hereby incorporated by reference a though the same were fully set forth at length herein.

20.    By way of background, Defendant uses military structure to emphasize its role as a "volunteer army" with a hierarchy of ranks.

4

21. Upon further information and belief, Defendant's officers oversee different functions such as preaching, social work, and community outreach.

22. Per Defendant's website, Defendant's mission is to "preach the gospel of Jesus Christ and to meet human needs in His name without discrimination."

23. On or about November 6, 2024, Plaintiff began full-time employment with Defendant as a Supportive Services Coordinator at Defendant's Carlisle, Pennsylvania location.

24. By way of further background, Plaintiff is a thirty-three (33) year old female.

25. Defendant's Carlisle outpost location maintains thrift store and a center serving the community, providing social services and similar assistance.

26. Plaintiff's position was located at the center on Pomfret Street, Carlisle, Pennsylvania.

27. On or about August 22, 2025, around 3:30 p.m., Plaintiff was in her office alone and seated at her desk.

28. After sitting down, Plaintiff took her shoes off, as they were new and hurting her feet.

29. Defendant's Case Worker, William Baltaeff ("Mr. Baltaeff"), came out of his office and sat directly across from Plaintiff.

5

30. Plaintiff apologized to Mr. Baltaeff for her shoes being off, indicating that her shoes were new and stiff.

31. Mr. Baltaeff suddenly and without consent grabbed Plaintiff's left foot, with lotion already on his hands, and began massaging Plaintiff foot, stating he "do[es] this for [his wife] almost every day."

32. As Plaintiff pulled her left foot away, Mr. Baltaeff simultaneously grabbed Plaintiffs' right foot and began rubbing it onto his erect penis.

33. Mr. Baltaeff quickly started thrusting Plaintiff foot up and down his erect penis, while asking Plaintiff, "can I rub it on my cock?"

34. Plaintiff immediately pulled her foot away and started to leave the building.

35. Mr. Baltaeff called after Plaintiff, stating, "this stays between us."

36. Plaintiff finished her workday in another building to avoid Mr. Baltaeff after the sexual assault.

37. Plaintiff spent the remainder of her day in a state of shock.

38. On August 24, 2025, Plaintiff emailed Joseph Smith ("Mr. Smith") and Rebecca Smith ("Ms. Smith") (collectively, "the Smiths"), Defendant's Corps. Officers and Pastors, and Trinette Ream ("Ms. Ream"), Defendant's Social Service Director, to discuss the sexual assault by Mr. Baltaeff.

6

39.     In this email, Plaintiff indicated that she did not want to be around Mr. Baltaeff and his wife (who was also an employee of Defendant's) due to a "bizarre and mind-boggling incident."

40.     Instead of an in-person meeting that Plaintiff requested, Ms. Smith and Ms. Ream said they could get on a call with Plaintiff.

41.     On this call, Plaintiff repeated the events of the sexual assault by Mr. Baltaeff to Ms. Smith and Ms. Ream, specifically using the words "sexual assault" multiple times, and describing in detail what occurred.

42.     Plaintiff asked to have the next day off work due to her fear of seeing Mr. Baltaeff and her increased anxiety after the attack.

43.     Ms. Smith and Ms. Ream told her she must come to work.

44.     On the morning of August 25, 2025, Plaintiff arrived at work at 8:30 AM but saw Mr. Baltaeff's car in the parking lot at Defendant and decided to wait in her car to avoid running into Mr. Baltaeff.

45.     Plaintiff texted Ms. Ream, "I am going to be a little late. To avoid any accidental encounters [with Mr. Baltaeff]."

46.     Ms. Ream responded to Plaintiff that Ms. Ream was off that day.

47.     While in the parking lot, Plaintiff received a call from Mr. Baltaeff, which Plaintiff did not answer.

48.     Mr. Baltaeff then texted Plaintiff, "Are you here? Don't see your car."

49.    Mr. Baltaeff has never done this previously, and Plaintiff understood this outreach as one intended to intimidate her or otherwise stop Plaintiff from reporting the sexual assault.

50.    Eventually, Plaintiff went into work, as she did not want to get in trouble for not showing up.

51.    The Smiths then came to tell Plaintiff that there would be an investigation and that Plaintiff would need to provide a written statement, which Plaintiff did that same day.

52.    That same day, Plaintiff also reported Mr. Baltaeff's contact attempts from that morning to the Smiths.

53.    Additionally, on the same day, Plaintiff was given an unusually high workload and number of tasks to complete by Defendant.

54.    Plaintiff believed this action was in retaliation for her reporting the sexual assault by Mr. Balteaff.

55.    On or about August 26, 2025, Plaintiff asked Ms. Ream several times if Plaintiff was able to keep the doors closed for walk-ins that day while the investigation progressed because Plaintiff was nervous to interact with male clients behind closed doors and due to the aforementioned additional work Plaintiff was given.

56.    Plaintiff's request was denied.

57. Upon information and belief, Defendant allowed this practice after Plaintiff was terminated, leading Plaintiff to believe that Ms. Ream's refusal to approve Plaintiff's request was retaliatory in nature.

58. On or about August 27, 2025, Plaintiff had a meeting in Defendant's conference room with whom Plaintiff believes to be Defendant's HR representative from Philadelphia, Diedre Getfield ("Ms. Getfield"), to give her statement, where Plaintiff again recounted the events of the sexual assault.

59. Ms. Ream was also present.

60. Plaintiff asked if Mr. Baltaeff would come in to give a statement, and Ms. Getfield told Plaintiff that Mr. Baltaeff would provide his statement via email.

61. Despite this, Ms. Smith then pulled Plaintiff aside after this meeting to tell Plaintiff that Mr. Baltaeff was in fact coming in-person to provide his statement and told Plaintiff to go home for the time being.

62. Later that day, Plaintiff returned to the office to continue her work day.

63. Plaintiff met with a resident at the domestic violence shelter, S.S., who was seeking Defendant's services in its rental housing unit, known as the Stewart House.

64. S.S. asked Plaintiff where the "male employee [you] usually work with" was, who Plaintiff understood to be referring to Mr. Baltaeff.

65.    Plaintiff told S.S. something to the effect of "he is not working here at the moment."

66.    Plaintiff further told S.S. something like, "I feel like I should tell you since I think as a potential resident that you have a right to know. He sexually assaulted me a few days ago."

67.    S.S. was shocked by this but at that time opted to continue the application for the room rental.

68.    S.S. then informed Plaintiff that she did not have access to cash, debit card, or a check to pay but did have Apple Pay.

69.    S.S. asked if she could use Apple Pay to transfer the money to Plaintiff and if Plaintiff could make the payment for S.S.

70.    Plaintiff allowed this so S.S could continue her application.

71.    Plaintiff had an amount of cash on her person necessary to make the payment for the room deposit for S.S.

72.    Plaintiff put the cash in an envelope at her desk.

73.    Plaintiff gave S.S. a receipt and kept one for Defendant's records with the cash envelope.

74.    By way of background, Plaintiff was not aware of a policy that prohibited this.

75.    By way of further background, S.S. was not required to make a deposit for the room.

76.    S.S. insisted on making a deposit only to reserve the room so another resident did not take it before her.

77.    Plaintiff later found out that S.S. ultimately backed out of Defendant's residential rental services, citing concerns with Mr. Balteaff.

78.    After finding out S.S. backed out Plaintiff refunded the money to S.S.

79.    On or about August 29, 2025, Plaintiff called off work because Plaintiff was not feeling well from the stress of the incident with Mr. Baltaeff.

80.    On or about September 2, 2025, Plaintiff returned to work.

81.    That same day, the Smiths and Ms. Ream told Plaintiff that she was being placed on administrative leave because Plaintiff disclosed the incident to S.S. out of concern for her safety and for the "transaction issue" where S.S. requested a refund for her rental deposit, to which Plaintiff immediately refunded the money to the client.

82.    Ms. Smith then told Plaintiff that they would update her within 24 hours of the results of a purported investigation into this, and that it was "in corporate's hands."

83.    Despite a purported investigation, Plaintiff was not given the ability to explain what happened with S.S. or the Apple Pay refund.

11

84. Upon information and belief, Mr. Baltaeff was given the opportunity to explain his conduct during an investigation that took several days, including providing a statement.

85. Plaintiff believes and therefore avers that she was not given the same opportunity to do so because of Plaintiff's sex and gender, and in retaliation for reporting a sexual assault.

86. On or about September 3, 2025, Ms. Smith called Plaintiff to tell her that Plaintiff was terminated, citing that it was in Defendant's "best interest" to part ways with her.

87. Ms. Smith asked Plaintiff to come to retrieve her belongings from the workplace.

88. Plaintiff asked Ms. Smith if Mr. Baltaeff would be on Defendant's premises that day, to which Ms. Smith said he would be retrieving his belongings but at a different time.

89. Plaintiff expressed her concern about being in the same vicinity as Mr. Baltaeff and asked if she could retrieve her belongings on a different day.

90. Ms. Smith told Plaintiff that she had to retrieve her belongings on September 4, 2026, at 2:00 p.m., despite Mr. Baltaeff also being on the property to retrieve his belongings that day.

91.     Plaintiff later received a termination letter from Defendant stating that it was "not in the best interest of the Salvation Army" for Plaintiff's continued employment.

92.     Upon further information or belief, Mr. Baltaeff confirmed the occurrence of the sexual assault he forced upon Plaintiff and is currently facing criminal charges.

93.     For the reasons stated above, Defendant's reasons for termination were pretextual.

94.     Plaintiff was terminated in a discriminatory manner based on sex and gender and in retaliation for Plaintiffs good faith reports of the sexual assault by Mr. Baltaeff.

95.     As a result of the gender discrimination, and retaliation due to Mr. Baltaeff sexual assault to which Plaintiff was subjected to, Plaintiff has suffered damages in the form of, inter alia, mental and emotional distress.

96.      Based on the foregoing, Plaintiff avers that Defendant discriminated against Plaintiff due to her gender and retaliated against Plaintiff because of her good faith report of sexual harassment, and terminated Plaintiff's employment, in violation of Title VII and the PHRA.

97.    As a result of Defendant's deliberate, unlawful, and malicious acts as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, and emotional pain and suffering.

**COUNT I**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**29 U.S.C. § 2000e, et seq.**
**GENDER AND SEX DISCRIMINATION**
**PLAINTIFF V. DEFENDANT SALVATION ARMY**

98.    Paragraphs 1 through 97 are hereby incorporated by reference as though the same were fully set forth at length herein.

99.    Defendant had fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the then-current or preceding calendar years applicable to Plaintiff's claims.

100.    Defendant is therefore an "employer" as defined and covered by Title VII.

101.    At all times material hereto, Plaintiff was an "employee" of Defendant as defined by Title VII.

102.    Plaintiff is a member of a protected class due to her gender and sex.

103.    Plaintiff suffered an adverse employment action.

104.    Said adverse employment action occurred under circumstances that could give rise to an inference of intentional discrimination on the basis of gender and sex.

14

105.   Defendant subjected Plaintiff to and/or otherwise permitted the existence of discrimination because of gender and sex in violation of Title VII.

106.   Defendant failed to take appropriate remedial action to address the discrimination that Plaintiff endured and reported to Defendant in good faith.

107.   Defendant also terminated Plaintiff after her good faith complaints about the sexual harassment and sexual assault by Mr. Baltaeff.

108.   As a result of Defendant's deliberate, unlawful, and malicious acts as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, and emotional pain and suffering.

**COUNT II**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**29 U.S.C. § 2000e**, *et seq.*
**RETALIATION**
**PLAINTIFF V. DEFENDANT SALVATION ARMY**

109.   Paragraphs 1 through 108 are hereby incorporated by reference as though the same were fully set forth at length herein.

110.   Defendant had fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the then-current or preceding calendar years applicable to Plaintiff's claims.

111.   Defendant is therefore an "employer" as defined and covered by Title VII.

112. At all times material hereto, Plaintiff was an "employee" of Defendant as defined by Title VII.

113. Plaintiff made good faith complaints of sexual harassment to Defendant.

114. Plaintiff's complaints are protected activities under Title VII.

115. Defendant failed to take appropriate remedial action to address the sexual harassment that Plaintiff endured.

116. Defendant refused Plaintiff's requests to avoid Mr. Baltaeff.

117. Defendant terminated Plaintiffs employment in retaliation for her good faith complaints about the sexual harassment and sexual assault by Mr. Baltaeff.

118. Defendant acted with malice and reckless indifference to Plaintiff's civil rights and emotional and physical wellbeing.

119. The aforementioned acts, or refusals to act, of Defendant constitute retaliation directed at Plaintiff because of her good faith complaints about the sexual harassment and/or assault by Mr. Baltaeff, in violation of Title VII.

120. As a result of Defendant's deliberate, unlawful, and malicious acts as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, and emotional pain and suffering.

**COUNT III**
**PENNSYLVANIA HUMAN RELATIONS ACT**
**43 P.S. § 951**, *et seq.*
**GENDER AND SEX DISCRIMINATION**

## PLAINTIFF V. DEFENDANT SALVATION ARMY

121. Paragraphs 1 through 120 are hereby incorporated by reference as though the same were fully set forth at length herein.

122. Defendant had four (4) or more employees at all times applicable to Plaintiff's claims.

123. Defendant is therefore an "employer" as defined and covered by the PHRA.

124. At all times material hereto, Plaintiff was an "employee" of Defendant as defined by the PHRA.

125. Plaintiff is a member of a protected class due to her gender and sex.

126. Plaintiff suffered an adverse employment action.

127. Said adverse employment action occurred under circumstances that could give rise to an inference of intentional discrimination on the basis of gender and sex.

128. Defendant subjected Plaintiff to and/or otherwise permitted the existence of discrimination because of gender and sex in violation of the PHRA.

129. Defendant failed to take appropriate remedial action to address the discrimination that Plaintiff endured and reported to Defendant in good faith.

130. Defendant also terminated Plaintiff after her good faith complaints about the sexual harassment and sexual assault by Mr. Baltaeff.

17

131. As a result of Defendant's deliberate, unlawful, and malicious acts as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, and emotional pain and suffering.

## COUNT IV
## PENNSYLVANIA HUMAN RELATIONS ACT
## 43 P.S. § 951, *et seq.*
## RETALIATION
## PLAINTIFF V. DEFENDANT SALVATION ARMY

132. Paragraphs 1 through 131 are hereby incorporated by reference as though the same were fully set forth at length herein.

133. Defendant had four (4) or more employees at all times applicable to Plaintiff's claims.

134. Defendant is therefore an "employer" as defined and covered by the PHRA.

135. At all times material hereto, Plaintiff was an "employee" of Defendant as defined by the PHRA.

136. Plaintiff made good faith complaints of sexual harassment to Defendant.

137. Plaintiff's complaints are protected activity within the meaning of the PHRA.

138. Defendant failed to take appropriate remedial action to address the sexual harassment that Plaintiff endured.

18

139.   Defendant refused Plaintiff's requests to avoid Mr. Baltaeff.

140.   Defendant also terminated Plaintiff after her good faith complaints about the sexual harassment and sexual assault by Mr. Baltaeff.

141.   The aforementioned acts, or refusals to act, of Defendant constitute retaliation directed at Plaintiff because of her good faith complaints about the sexual harassment and/or assault by Mr. Baltaeff, in violation of the PHRA.

142.   As a result of Defendant's deliberate, unlawful, and malicious acts as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, and emotional pain and suffering.

**COUNT V**
**BATTERY**
**PLAINTIFF V. DEFENDANT WILLIAM BALTAEFF**

143.   Paragraphs 1 through 142 of the Complaint are hereby incorporated by reference as though the same were fully set forth at length herein.

144.   Defendant William Baltaeff intended to cause harmful or offensive contact to Plaintiff's person.

145.   Plaintiff did not consent to Defendant Baltaeff's touching of her person.

146.   As a result of Defendant Baltaeff's intentional and unwanted touching to Plaintiff's person, Plaintiff has suffered loss of employment, medical expenses, and emotional pain and suffering.

**WHEREFORE**, as a result of the unlawful conduct of Defendant Salvation Army and Defendant William Baltaeff, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants, and grant her the maximum relief allowed by law, including, but not limited to:

A.    Back wages, front pay, lost benefits, and compensatory and/or non-economic damages in an amount to be determined at trial;

B.    Plaintiff's costs, disbursements, and attorneys' fees incurred in prosecuting this action;

C.    Plaintiff's medical expenses and other economic damages resulting from the nonconsensual touching;

D.    Pre-judgment interest in an appropriate amount;

E.    Such other and further relief as is just and equitable under the circumstances; and,

F.    Any verdict in favor of Plaintiff be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages as set forth by applicable law.

## JURY DEMAND

147.    Plaintiff hereby demands a trial by jury as to all issues so triable.

Respectfully submitted,

**MARZZACCO INJURY LAW**

20

By:   /s/ *Kendyl L. Swank*
      Kendyl L. Swank, Esq.
      945 East Park Drive, Suite 103
      Harrisburg, PA 17111
      TEL: 717-231-1640
      FAX: 717-231-1650
      kswank@klnivenlaw.com
      *Attorney for Plaintiff*

Dated: July 28, 2026

21

## <u>DEMAND TO PRESERVE EVIDENCE</u>

The Defendant is hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to Plaintiff's potential claims and her claims to damages, to any defenses to same, including but not limited to, electronic data storage, employment files, files, memos, job descriptions, text messages, emails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.